## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STEVE SCHNIPPER INDIVIDUAL 401(K) CUST,<br><br>          Plaintiff,<br><br>   v.<br><br>GARRISON CAPITAL, INC., JOSEPH TANSEY, BRIAN CHASE, CECIL MARTIN, JOE MOREA, and MATTHEW WESTWOOD,<br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Steve Schnipper Individual 401(k) Cust ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Garrison Capital, Inc. ("Garrison Capital" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Garrison Capital and the Defendants.

## SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Garrison Capital and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Portman Ridge Finance Corporation ("Portman") (the "Proposed Transaction").

2.     On June 24, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Portman, pursuant to which Garrison Capital stockholders will receive a combination of (i) $19.1 million in cash (approximately $1.19 per share) from Portman; (ii) Portman shares valued at 100% of Portman's net asset value per share at the time of closing of the transaction in an aggregate number equal to Garrison Capital's net asset value at closing minus the $19.1 million of Portman cash merger consideration; and (iii) an additional cash payment from Sierra Crest, the external adviser to Portman, of $5.0 million in the aggregate, or approximately $0.31 per share.

3.     On September 1, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Garrison Capital and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to

Garrison Capital shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   In addition, the Company's stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a common shareholder of Garrison Capital.

9.     Defendant Garrison Capital is incorporated under the laws of the Delaware, with its principle executive offices located at 1290 Avenue of the Americas, Suite 914, New York, NY 10014.   The Company's common stock trades on the NASDAQ under the symbol "GARS."

10.     Defendant Joseph Tansey ("Tansey") is and has been the Chairman of the Board and Garrison Capital's Chief Executive Officer at all times during the relevant time period.

11.     Defendant Brian Chase ("Chase") is and has been a director of Garrison Capital at all times during the relevant time period.

12.     Defendant Cecil Martin ("Martin") is and has been a director of Garrison Capital at all times during the relevant time period.

13.     Defendant Joe Morea ("Morea") is and has been a director of Garrison Capital at all times during the relevant time period.

14.     Defendant Matthew Westwood ("Westwood") is and has been a director of Garrison Capital at all times during the relevant time period.

15.     Defendants Tansey, Chase, Martin, Morea, and Westwood are collectively referred to herein as the "Individual Defendants."

16.     The Individual Defendants, along with Defendant Garrison Capital, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**<u>Background of the Company</u>**

17.     Defendant Garrison Capital is an externally managed, non-diversified, closed-end management Investment Company that has elected to be treated as a business development company under the Investment Company Act of 1940. Garrison Capital is managed by its investment adviser, Garrison Capital Advisers LLC, an affiliate of Garrison Investment Group, and a registered investment adviser under the Investment Advisers Act of 1940 which provides the resources and expertise of the investment professionals at Garrison Investment Group.

**The Company Announces the Proposed Transaction**

18.     On June 24, 2020, the Company jointly issued a press release announcing the

Proposed Transaction.  The press release stated in part:

> NEW YORK, June 24, 2020 (GLOBE NEWSWIRE) -- Garrison Capital Inc.
> (Nasdaq: GARS) ("GARS") and Portman Ridge Finance Corporation ("PTMN")
> (Nasdaq: PTMN) announced today that they have entered into a definitive
> agreement under which GARS will merge with and into PTMN, a business
> development company managed by Sierra Crest Investment Management LLC
> ("Sierra Crest"), an affiliate of BC Partners Advisors L.P. ("BC Partners") and
> LibreMax Capital LLC. The transaction is the result of the previously announced
> review of strategic alternatives by GARS and has been approved by a unanimous
> vote of the Board of Directors of GARS (on the unanimous recommendation of
> the Special Committee of the Board of Directors of GARS) and the Board of
> Directors of PTMN.
>
> *        *        *
>
> Under the terms of the proposed transaction, GARS stockholders will receive a
> combination of (i) $19.1 million in cash (approximately $1.19 per share) from
> PTMN; (ii) PTMN shares valued at 100% of PTMN's net asset value per share at
> the time of closing of the transaction in an aggregate number equal to GARS' net
> asset value at closing minus the $19.1 million of PTMN cash merger
> consideration; and (iii) an additional cash payment from Sierra Crest, the external
> adviser to PTMN, of $5.0 million in the aggregate, or approximately $0.31 per
> share. GARS' stockholders will receive value per share of approximately 105% of
> GARS' net asset value per share from PTMN and Sierra Crest (based on March
> 31, 2020 net asset values per share of both GARS' and PTMN's stock and the
> aggregate value of cash consideration). Assuming a transaction based on
> respective March 31, 2020 net asset values for GARS ($105.7 million, or $6.59
> per share) and PTMN ($120.4 million, or $2.69 per share), adjusted for expected
> transaction expenses, and PTMN's closing price on June 23, 2020 of $1.25, the
> transaction (including the additional cash payment from Sierra Crest of $0.31 per
> share) currently values GARS shares at approximately $3.97 per share, which
> represents 62% of GARS' March 31, 2020 net asset value (adjusted for expected
> transaction expenses) and a 43% premium to GARS' closing price on June 23,
> 2020.
>
> The exchange ratio for the stock component of the merger will be determined by
> the net asset value of GARS and PTMN as of the closing, calculated as of 5:00
> p.m. New York City time on the day prior to the closing of the transaction. In
> addition to approval by GARS' and PTMN's respective stockholders, the closing

of the merger is subject to customary conditions. The parties currently expect the transaction to be completed in the fourth calendar quarter of 2020.

"After a robust and thorough strategic alternatives process conducted by the Board of Directors, we believe this transaction is an excellent result for the GARS stockholders, along with continuing the growth objective and value creation for PTMN stockholders," said Joseph Tansey, Chairman and Chief Executive Officer of GARS. "In addition to a significant cash consideration component, we believe the continued ownership of PTMN stock and their affiliation with the BCP Credit team and the overall BC Partners platform will provide stockholders with enhanced value and significant future upside."

"We are very excited to merge Garrison Capital Inc. with Portman Ridge Finance Corporation, as it represents the continued execution of our vision for consolidation in the BDC space and is expected to be an accretive transaction for GARS and PTMN stockholders. With the combined entity being almost double the size of either current company, we believe stockholders will benefit from larger scale and hold sizes on the investment portfolio side, a reduction in per share public company costs and increased trading liquidity in the equity," said Ted Goldthorpe, President and Chief Executive Officer of PTMN and Head of BC Partners Credit.

**Transaction Advisors**

Keefe, Bruyette & Woods, *A Stifel Company* served as exclusive financial advisor to the Special Committee of GARS' Board of Directors. Proskauer Rose LLP served as counsel to GARS and Eversheds Sutherland (US) LLP served as counsel to the Special Committee of GARS' Board of Directors. Simpson Thacher & Bartlett LLP served as counsel to PTMN.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

19.    On September 1, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

20.    Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.    However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions regarding whether to vote in favor of the Proposed

Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding Management's Financial Projections

21.     The Proxy Statement notes that the Company's management prepared financial

and operating forecasts and projections which were provided to Keefe, Bruyette & Woods

("KBW") that were used and relied upon by KBW at the direction of such management in

connection with KBW's financial opinion. However, the Proxy Statement fails to disclose any

information concerning said projections prepared by the Company's management.

22.     Disclosure of the above information is vital to provide investors with the complete

mix of information necessary to make an informed decision when voting on the Proposed

Transaction.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding KBW'S Financial Opinion

23.     The Proxy Statement contains the financial analyses and opinion of KBW

concerning the Proposed Transaction, but fails to provide material information concerning such.

24.     With respect to KBW's *Selected Companies Analysis*, the Proxy Statement fails to

disclose: (i) the latest 12 months ("LTM") net investment income per share ("NII") for the

companies selected for the analysis; and (ii) the market performance for each of the companies

selected for the analysis.

25.     With respect to KBW's *Selected Transactions Analysis—BDCs*, the Proxy

Statement fails to disclose: (i) the respective transaction dates and the transaction consideration

value paid for each acquired company; (ii) Price to NAV per share of each acquired company;

and (iii) Price to LTM NII per share of each acquired company.

26.     With respect to KBW's *Dividend Discount Analysis of GARS*, the Proxy Statement fails to disclose: (i) the potential dividends used by KBW in the analysis; (ii) the terminal values used by KBW in the analysis; (iii) the estimated total assets, tangible common equity, and net income used by KBW in the analysis; (iv) the basis for KBW's application of the the present value of the estimated future dividends of GARS over the period from the assumed closing date of the proposed transaction through December 31, 2023; and (v) the inputs and assumptions underlying KBW's usage of implied terminal values for GARS calculated by applying a terminal dividend yield range of 17.0% to 9.0% to GARS' estimated fiscal year 2023 dividends, as well as, terminal multiple range of 0.4x to 1.0x to GARS' estimated NAV per share as of December 31, 2023.

27.     With respect to KBW's *Dividend Discount Analysis of PTMN*, the Proxy Statement fails to disclose: (i) the potential dividends used by KBW in the analysis; (ii) the terminal values used by KBW in the analysis; (iii) the estimated total assets, tangible common equity, and net income used by KBW in the analysis; (iv) the basis for KBW's application using two methodologies, one based on December 31, 2023 estimated NAV per share multiples and the other based on fiscal year 2023 estimated dividend yields; and (v) the inputs and assumptions underlying KBW's selection of the range of discount rates ranging from 20.0% to 20.5%.

28.     The Proxy Statement fails to disclose the amount of fees paid by Portman to KBW during the two years preceding the date of KBW's opinion.  KBW provided investment banking and financial advisory services to Portman (formerly named KCAP Financial, Inc. prior to April 1, 2019) and received compensation for such services. KBW also acted as (i) financing advisor in KCAP's March 2018 credit facility, (ii) financial advisor to KCAP in connection with its December 2018 sale of certain of its asset management subsidiaries, and (iii) financial advisor

to Portman in connection with its April 2019 externalization of advisor transaction.

29.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

30.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

31.     The Proxy Statement contains information regarding the background of the sales process leading up to the Proposed Transaction, but fails to provide material information concerning such.

32.     For instance, the Proxy Statement notes that a Garrison Capital Special Committee was established in April 2020, but does not disclose why this was not done earlier, when the process for seeking alternatives began in October 2019.

33.     Next, the Proxy Statement fails to disclose why the Garrison Capital Special Committee didn't obtain its own financial advisor instead of enlisting the Board's financial advisor.

34.     Without the above described information, the Company's shareholders are unable

to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information

regarding, among other things, the financial projections for the Company.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

40.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

41.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they

were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

43.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

44.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Garrison Capital within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Garrison Capital, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

49.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 23, 2020                                   Respectfully submitted,


By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*